WALTER *v.* DETROIT, JACKSON & CHICAGO RAILWAY.

1. EVIDENCE—HYPOTHETICAL QUESTIONS—STREET RAILWAYS—PERSONAL INJURIES.

On cross-examination of defendant's motorman, in a personal injury action for colliding with plaintiff's vehicle and horse which turned upon the street car track as an automobile in passing at high speed caused the horse to become unmanageable, it was not objectionable to ask in what distance the motorman could have checked a car going at the rate of speed it was under and with similar conditions of weather, track, etc., prevailing. The question was not hypothetical; no facts and circumstances being assumed.

2. SAME—KNOWLEDGE—OPINIONS.

The fact which was developed, that witness did not know the weight of the car, did not deprive his opinion of its value, where he was testifying from actual experience.

3. WITNESSES—STATUTES—AGENT OF DEFENDANT.

To warrant calling a witness as an agent or servant of the defendant under 3 Comp. Laws 1915, § 12554, it was not essential that he should have been directly concerned in the happening or occurrence out of which the alleged injury grew, if he was an employee of the defendant at the date of the accident.

4. SAME—CONCLUSION—EXPERT TESTIMONY.

And where there was evidence that tended to identify the street car which caused plaintiff's injury and also to establish the fact that another witness called by plaintiff as an expert had operated it, the court did not commit error in permitting him to give his opinion as to the distance in which it might be stopped, whether or not he could testify to its weight.

5. STREET RAILWAYS—TRIAL—CHARGE.

Instructions of the court to the jury that if plaintiff was in a position of danger and the motorman of defendant's street car realized her danger or had good reason to believe that plaintiff could not extricate herself from the position of peril or reach a place of safety, and if he could thereafter, in the exercise of reasonable diligence, have stopped the car under conditions as they then existed, and he did not immediately apply his brake and stop the car and that in so failing he was guilty of negligence and that plaintiff was free from negligence, the verdict should be for plaintiff: *held*, proper when considered with the remainder of the charge to the effect that he would not be chargeable with negligence solely because he happened to choose a course that turned out to be wrong or not the best, if he exercised a proper judgment; and for a mere error in such determination the employer would not be liable.

Error to Wayne; Cross, J., presiding. Submitted April 5, 1916. (Docket No. 17.) Decided June 1, 1916.

Case by Caroline Walter against the Detroit, Jackson & Chicago Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*William G. Fitzpatrick*, of counsel), for appellant.

*Dohany & Dohany*, for appellee.

STONE, C. J. This case grows out of the same ac-\ cident that was involved in the case of Martha Walter against the same defendant, *ante*, 181 (157 N. W.

414). All of the witnesses, except one, sworn in that case, were sworn in this, and the testimony of the witnesses, common to both cases, is substantially the same on all material points in each. As the reported case contains a full statement of the occurrence, a brief statement here will suffice.

About noon, on June 28, 1913, the plaintiff and her daughter, Martha Walter, were riding west, in a light market wagon drawn by a single horse, on Michigan avenue, through the township of Dearborn, Wayne county. It was a bright, clear day. Michigan avenue was paved with concrete at the place in question. Lying immediately north of the concreted way, and running parallel thereto, and about three feet distant therefrom, was the track of the defendant. Both highway and track were straight for a considerable distance east and west of the scene of the accident. The plaintiff was driving the horse, which was on the north side of the concreted roadway. Approaching from the west at a rapid rate of speed, and likewise on the north side of the concreted way, was an automobile. As it came toward the plaintiff's rig it was directly in front. It continued to proceed thus, until within a few feet of the rig, when it swung suddenly to the south and passed. The manner of its approach, or its passing, or both, caused the horse to take fright and precipitately turn toward and proceed upon the defendant's track. At this time one of defendant's freight cars was approaching from the west at a rate of speed estimated to be from 35 to 40 miles an hour, and, although the plaintiff tried to get the horse back off the track, it was struck and killed by the car, and both women were thrown from the wagon and injured. The plaintiff brought suit, and on the trial recovered a verdict and judgment for $1,000. A motion for a new trial, on the grounds that the verdict was contrary to law and against the weight of the evidence, was made, and

denied. To this denial the defendant filed exceptions, and has brought the case here assigning errors.

As to the negligence of the defendant charged, the two declarations are identical. Upon the questions of the negligence of the defendant, and the proximate cause of the injury, we are of the opinion that the instant case is governed and controlled by the opinion in the case of Martha Walter.

By the assignments of error some questions are raised upon rulings in the admission of evidence. We proceed to consider those.

The plaintiff called the motorman, Denio, for cross-examination under Act No. 307, Pub. Acts 1909 (3 Comp. Laws 1915, § 12554), and the following occurred:

"*Q.* In what distance could you stop that car on that track at that place under those conditions with that load on, going at the rate of 35 miles an hour towards the east?

"*Mr. Fitzpatrick:* I object to that as incompetent, as calling for a conclusion, and an opinion. The question in this case is: What distance did he stop the car in? Then the question further may be whether that was a reasonable or proper or improper stop, but I claim that the witness cannot be asked to give his opinion or a conclusion as to the distance in which he could have stopped that car on that morning.

"*The Court:* I think he may answer it.

"*Mr. Fitzpatrick:* Exception.

"*Q.* Do you desire the question read, Mr. Denio?

"*A.* Please.

(The question was repeated by reporter.)

"*Mr. Fitzpatrick:* I add the further objection that it does not yet appear the weight of the car, a question that would obviously be of importance, almost controlling bearing, if the question is to be treated as a hypothetical or expert one.

"*Mr. Dohany:* The question refers to that identical car, your honor.

"*The Court:* Does he know the weight of it?

"*Q.* Did you hear Mr. Hugh Savage testify concerning the weight of that car?

"*A.* No, sir; I did not.

"*Q.* You never weighed it yourself?

"*A.* No, sir.

"*Mr. Dohany:* I insist upon an answer, your honor.

"*Mr. Fitzpatrick:* Perhaps I have not made the point that I intend to raise, your honor, sufficiently clear. It is this: That it is never competent in a case of negligence or claimed negligence to put the actor, the man who is really charged with the negligence, upon the witness stand, and by a hypothetical or expert opinion or question draw from him a statement which amounts to an opinion or conclusion, which opinion or conclusion comprehends the vital issue in the case as to whether or not there was or was not negligence in the doing or refraining from doing the things that were done or that were refrained from. That was what I had in mind. That, in this case, ultimately the jury must determine from all the facts and circumstances whether the actual stop that this man made of the car was a negligent or a nonnegligent stop, and to ask him hypothetically, in advance of a showing of all the facts and circumstances, to say within what distance he could stop the car, is an invasion of the province of the jury.

"*The Court:* It is true that is a question for the jury to find on. As I understand it, witness, you had driven this car for some time?

"*A.* Yes, sir.

"*The Court:* Or similar cars?

"*A.* Yes, sir.

"*The Court:* I think he may answer the question.

"*Mr. Fitzpatrick:* I may have an exception?

"*The Court:* Yes.

(The question was read by reporter.)

"*Mr. Fitzpatrick:* I also have an exception on the proposition that the question does not include the weight of the car?

"*The Court:* Yes.

"*A.* About 400 feet."

It is urged by appellant that the question was not competent; that it in effect called for an opinion, and

yet in form it was not hypothetical, and if treated hypothetically it did not contain within itself some of the material facts in the case—notably the question of the weight of the car. In our opinion the question put to the witness was not a hypothetical question. There were no assumed facts or circumstances. The fact that the witness did not know the weight of the car was unimportant, as he testified that he had operated it many times, and had been in the employ of the defendant between 16 and 17 years at the time of the occurrence. The question called for his judgment founded on his experience. We do not think that the court erred in its ruling in that regard.

The third assignment of error is to the effect that the court erred when it permitted, over the objection of the defendant, the plaintiff to call the witness Sullivan under the provisions of said Act No. 307 (3 Comp. Laws 1915, § 12554); it appearing that the witness had nothing to do with the operation of the car in question at the time of the accident, and that he was not in the employ of the defendant at the time of the trial. What occurred at the trial was as follows:

"*Mr. Dohany:* I will say, your honor, this witness is called under Act No. 307 of the Laws of 1909. He was in the employ of the defendant, at the time the accident occurred.

"*Mr. Fitzpatrick:* Unless he was an agent or servant in connection with the operation of this car, I want the record to disclose my objection to his being called under the statute.

"*The Court:* As I understand it, you claim he was an employee of the company at that time?

"*Mr. Dohany:* Yes, your honor.

"*The Court:* All right. Exception for defendant."

Counsel for defendant contends that, to warrant calling a witness under the statute, such ex-employee must have been an actor in, or directly connected with,

the happening of the transaction out of which the suit or proceeding grew.

We do not so understand the language of the statute. It provides that (3 Comp. Laws 1915, § 12554) :

"Hereafter, in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf the opposite party, employee, or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party," etc.

We cannot agree with this contention of counsel. It places too narrow a construction upon the language quoted. If called by the opposite party, plaintiff would have had the right to cross-examine the witness upon any material matter. Counsel further contends that such witness could not be examined as an expert witness. We decline to discuss or consider that question, for the reason that his objection did not cover it. In his objection the point was not made that this witness could not be called under the statute to testify as an expert.

We cannot consider an objection not brought to the attention of the trial court, or based on an exception. *Baker* v. *City of Detroit*, 166 Mich. 597, 600 (132 N. W. 462).

The fourth assignment of error is to the effect that the court erred in permitting the witness Sullivan to answer the hypothetical question as to the distance in which a car could be stopped, under certain assumed conditions of weight of load, speed, condition of track, and braking equipment, for the reason that it did not appear that the witness had familiarity with the particular car in question because of having operated it, and for the further reason that the question did not

include the weight of the car itself, and for the further reason that the distance in which the witness could have stopped the particular car was not controlling, either hypothetically or actually. Upon this question what occurred at the trial was as follows:

"*Q.* It appears here, Mr. Sullivan, that on June 28, 1913, one of these freight cars that you have operated, and which Mr. Denio has described as No. 7800, was going eastward on the company's tracks about 80 rods east of the Bender switch. This car had passed over the switch and had not made a stop after crossing the River Rouge bridge. It had about 11 or 12 tons of freight on it, 11 tons, I think, 12 tons, and it was in charge of motorman Denio. It was going at the rate of about 35 or 40 miles an hour, somewhere about 35 miles an hour, and it was a bright, clear day; in fact, a warm day. The track was in good condition; the air brakes were in good condition. It became necessary to make a stop, using the air brake in making the stop. Will you state to the jury in what distance you could stop that car, going at that rate of speed, under those conditions?

"*Mr. Fitzpatrick:* I object to the form of the question as incompetent:  *First,* for the reason that it assumes that this witness has familiarity with, because of having operated, this particular freight car; *second,* for the reason that it does not include the weight of the car itself, which would be an important factor; and, *third,* and finally, for the reason as to its materiality or relevancy, because the distance in which this witness could have stopped the car is not controlling, either hypothetically or actually.

"*The Court:* As I understand it, it was that he had operated this particular car?

"*Mr. Dohany:* Yes, your honor, the witness has said that he operated all of the freight cars, but he does not identify this one by that No. 7800; that is, they had different numbers before the Detroit United Railway began to control them.

"*A.* I say, if this car, before they renumbered them, was 7, 8, 9, 10, or 12—

"*Mr. Fitzpatrick:* He had operated it.

"*A.* I operated it.

"*Mr. Fitzpatrick:* You do not undertake to say this car was one of those cars?

"*A.* I am not positive, no, but they renumbered those cars, and they are still in the freight service. Whether this 7800 was one or not, I don't know.

"*The Court:* There would have to be some showing then?

"*Mr. Dohany:* Well, I will just ask Mr. Denio what number was this car, Mr. Denio, before it was changed to 7800?

"*Mr. Denio:* I could not say.

"*Mr. Dohany:* Well, was it one of the 5, 6, 7, 8?

"*A.* 7, 8, 9, 10—

"*Mr. Dohany:* 7, 8, 9, 10, or 12; was it one of those?

"*Mr. Denio:* It was one of the old cars built by the old company. It was not 12, but it may be one of the others.

"*Mr. Dohany:* It was one of those with the number changed afterwards?

"*Mr. Denio:* Yes, sir.

"*Mr. Dohany:* Well, I guess that covers it, your honor.

"*The Court:* He may answer then.

"*Mr. Fitzpatrick:* Give me an exception.

"*A.* Now, what is the question?

"*Q.* The question is the distance in which you could stop it?

"*A.* If it was running, you said—

"*Q.* Between 35 and 40 miles an hour?

"*A.* And how much freight on it?

"*Q.* Twelve tons.

"*A.* I would say about 400 feet."

In the light of the testimony of the witness Denio above quoted, we think there was evidence as to the identity of the car, and that Sullivan had operated it, and that there was no error in permitting the witness to answer the question.

While his testimony may not have been controlling, it was material and proper to go to the jury.

The tenth assignment of error complains of the following part of the charge:

"I charge you that if the plaintiff and her daughter were in a position of peril on or near the tracks of the defendant, and that the motorman of defendant's car in question saw and realized that the plaintiff was in such position of danger, and knew, or had good reason to believe, that the plaintiff could not extricate herself from such position of peril or reach a place of safety, and that great injury to the plaintiff would be inflicted unless the car was stopped, and that said motorman, after so observing and realizing the peril of plaintiff, could, by the exercise of due care or reasonable diligence, have stopped his car with the brake mechanism in the condition they were then in, and by so doing could have avoided injuring the plaintiff, and that said motorman did not immediately apply his brakes and stop his car, and in failing to do so was guilty of negligence which caused the injury to the plaintiff complained of, and that the plaintiff was free from contributory negligence, then you should find a verdict for the plaintiff."

It is urged that the case was erroneously made to turn on the point that there was an appreciable period of inaction on the part of the motorman in applying the brakes, and that the jury was instructed that if the "motorman did not immediately apply his brakes and stop his car, and in failing to do so was guilty of negligence, which caused the injury to the plaintiff, * * * then you should find a verdict for the plaintiff."

In this connection, we think the following language of the charge should appear:

"You are instructed that, when to avoid an impending collision the motorman is obliged to choose instantly one of two appliances or methods provided for stopping the car or averting the collision, he is not guilty of, and his company is not chargeable with, negligence, because the event proves that the one he chose and used may not have been efficacious, or the best to meet the exigency. Whether the one or the other means provided for stopping the car should have been adopted was a matter for the exercise of the motorman's judg-

ment, and for an error in his exercise the defendant could not be held responsible. It is not claimed in this case that the motorman was negligent in deciding to use the brake instead of reversing the current. The claim is that he was negligent in not applying the brakes as soon as he saw the danger to the plaintiff."

The question whether, at that point, the motorman was guilty of negligence in not immediately applying his brakes was, we think, properly submitted to the jury. Fairly, the charge may be said to mean only that at the time he perceived, or ought to have perceived, the perilous position of plaintiff, the motorman should have immediately applied his brakes. We do not think that the rule here stated conflicts with the doctrine of *Rathbone* v. *Railway,* 187 Mich. 586 (154 N. W. 143), and *Pearl* v. *Railway,* 188 Mich. 84 (153 N. W. 1062), as contended by counsel.

The other questions urged by appellant are, we think, all controlled and governed by the opinion in the case of Martha Walter, *ante,* 181 (157 N. W. 414).

Finding no reversible error in the record, the judgment below is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.