MORSE *v*. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. EVIDENCE—INFANTS—MORTALITY TABLES.

It was reversible error to admit the mortality tables in evidence, in an action under the survival act for the wrongful death of an infant 27 months old, whose expectancy did not appear from the tables: and the evidence was not admissible to show the probable duration of his life after he should arrive at majority.

2. RAILROADS—NEGLIGENCE.

Evidence that defendant's engineer, seeing the infant on the track soon enough to have stopped his train, did not do so,

merely sounding his whistle and continuing until he was too near to avoid an accident, had a tendency to show negligence justifying a verdict for plaintiff.[1]

Error to Ingham; Wiest, J. Submitted November 9, 1911. (Docket No. 77.) Decided December 29, 1911.

Case by Glenn Morse, administrator of the estate of Albert J. Morse, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company for the unlawful killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Harrison Geer*, for appellant.

*Odell Chapman*, for appellee.

STEERE, J. Albert J. Morse, a child 27 months of age, was struck and fatally injured by one of defendant's freight trains near Comstock street crossing in Corunna, Mich., in the afternoon of July 16, 1904. He lived about 24 hours after the accident. His father, Glenn Morse, brought this action as administrator of his deceased son to recover damages under the so-called survival act (3 Comp. Laws, § 10117).

Deceased's parents resided 165 feet south of the crossing where he was killed, in a house which stood 55 feet east of Comstock street. On the afternoon of the accident, deceased's mother had gone up town on some errand, and left the child in care of his father, who was lame as the result of an injury sustained while working as a brakeman on the Soo Line Railway, and walked with difficulty, generally using a cane. Towards evening, the father, going to a field back of the house to milk a cow, took the child with him. About the time the father finished milking, the child started ahead toward the house through a patch of corn, and was hidden from sight. The father, being lame, walked slowly, but reached the house a short

[1] Care required of railroad company to prevent injuring small children upon the track, see notes in 25 L. R. A. 784; 6 L. R. A. (N S.) 283.

time after the child left him, and found he was not there. He looked around the house for him, and up and down the street. Looking toward the crossing of the railroad, he finally discovered him on defendant's track. A train was just coming, and the father started as hurriedly as he could for the child, but, before reaching him, the child was struck by the train, receiving injuries which resulted in his death. The declaration is in proper legal form under the survival act, and, briefly stated, charges defendant with gross negligence in the particular that the engineer saw deceased, a child of tender years, alone upon the track far enough away to have stopped the train before reaching him, and should have done so, but, instead, only sounded the danger signals to frighten him off the track, not attempting to stop the train until it was too late. Defendant pleaded the general issue. The case was tried before a jury.

At the conclusion of the testimony, defendant's counsel requested the court to direct a verdict for the defense on the ground that there was no evidence from which the jury could find defendant guilty of gross negligence, which was refused. A verdict was rendered by the jury in favor of plaintiff for the sum of $3,850. A motion was thereupon made for a new trial, and denied on condition that plaintiff remit the sum of $850. This was done, whereupon the court rendered judgment for $3,000 against defendant.

The record contained numerous allegations of error, but, in the view taken of the case by this court, it is thought only two require consideration at this time: *First.* The admission of the mortality table in evidence against defendant's objection. *Second.* The refusal of the court to grant the request that a verdict be directed for defendant.

The record shows that counsel for plaintiff, against objection, was permitted to introduce in evidence the mortality table under section 7220, 2 Comp. Laws, for the purpose of showing the probability of life on the part of the child after arriving at the age of 21 years. In *Raj-*

*nowski* v. *Railroad Co.*, 74 Mich. 21 (41 N. W. 847), a case brought by the mother as administratrix of a child alleged to have been killed through defendant's negligence, the court says:

"Counsel for plaintiff, against defendant's objection, were permitted to introduce in evidence before the jury the mortality table.   *   *   *   This was error, for the reason that the table gives no expectancy of life for any age under 10 years.  The plaintiff's intestate was but five years of age, and what pertinent use could be made of the table it is impossible to see.  Those at all versed in the science of longevity know that the chances of an infant of the age of five to reach a remote period of existence are far less than when he arrives at ten.  Few, if any, insurance companies, take risks upon lives under ten years of age."

Infant mortality is a matter of common knowledge. It follows that an infant of 27 months has yet fewer chances to reach a remote period of existence than when he arrives at ten.  It was the duty of the jury to estimate deceased's expectancy from the age of 27 months, not 10 years or 21 years.  In disposing of the motion for a new trial, the court took note of this error, and stated that the admission of such table only bore upon the amount of damages, and, inasmuch as it gave the plaintiff's intestate a greater expectancy than it would had the consideration of the jury been limited to his actual age at the time of his death, substantial justice could be done by reducing the award made, and so required the plaintiff to remit $850.  While this might be a fair and rational disposition of the objection if within the power of the court, it was, nevertheless, invading the province of the jury, and amounted to a participation on the part of the court in the deliberations of the jury when passing upon questions of fact.  It is impossible for any court to judge what effect the mortality table had upon the deliberations of the jury.  This table, compared with what is called the Carlisle mortality table, shows that the jury may have been misled as to the child's expectancy to the extent of about 12 years.  Whether such was

or was not the case no one can say.    Under the decision referred to, admission of the mortality table against objection was reversible error.

Under the second allegation of error, before mentioned, it is strenuously urged by counsel for defendant that there is no evidence of gross negligence in the case which justifies a submission of that question to the jury.    Inasmuch as there must be a reversal of this case for reasons stated, it seems incumbent upon us to review this allegation of error, but it is not deemed advisable to dwell upon the testimony at this time, or emphasize the evidence of any particular witness by calling attention to it.    Suffice it to say that we are all agreed there is competent testimony in the case tending to show that the engineer should have seen, and in fact did see, the child on the track soon enough to have stopped the train before reaching him, and plainly enough to see and realize that he was a small child, unattended, and too young to appreciate the danger, or the meaning of the alarm given, and that, instead of checking his train so that he had it under control, he only sounded the danger signals and recklessly kept on until it was impossible to stop before striking the child.

On the other hand, there is also competent testimony controverting this, and tending to show that the instant the engineer, who was faithfully attending to his duties, discovered the child upon the track, he applied the emergency brake, shut off the steam, gave the danger signals, and made every effort within his power to stop the train. It is not proper to here discuss the significance or weight of such evidence further than to hold that it presents an irreconcilable conflict of competent testimony on a vital issue, which it is within the province of the jury to decide under proper instructions.

For the error heretofore pointed out, the case is reversed, and a new trial granted.

OSTRANDER, C. J., and MOORE, BROOKE, and STONE, JJ., concurred.