WALTER v. DETROIT, JACKSON & CHICAGO RAILWAY CO.

1. WITNESSES—CROSS-EXAMINATION—EVIDENCE.
    In an action for personal injuries, plaintiff's counsel did
    not lose the right to cross-examine a witness called as
    defendant's agent under 3 Comp. Laws 1915, § 12554, be-
    cause counsel did not claim the statutory privilege when
    he placed the witness on the stand.

2. SAME—OPINION—QUALIFICATIONS.
    An eyewitness of the accident, and participant in the
    collision with defendant's street car, who was asked wheth-
    er the car slackened its speed from the time she first saw
    it, 700 to 800 feet away, until it struck the conveyance,
    did not have to establish any particular qualifications to
    enable her to give her opinion; and though defendant
    claimed she had no opportunity to determine the matter of
    its speed, her testimony that she observed the approach
    of the car warranted the court in admitting the proofs.

3. SAME—GROSS NEGLIGENCE—LAST CHANCE RULE.
    It is gross negligence where the wrongdoer might, by the
    exercise of ordinary care, have known of plaintiff's prece-
    dent negligence and discovered his danger, but neglects to
    take proper measures to avoid an accident; it may be a
    deliberately wilful act, or an act so reckless as to be akin
    to wilful, and, hence, presumed by law to have been
    wilful, or a failure to exercise ordinary care to prevent
    injury after the peril of the other should have been or
    actually is discovered, in the exercise of reasonable care.

4. SAME—PROXIMATE CAUSE—TRIAL—QUESTION OF FACT.
    Plaintiff's horse, frightened by an approaching automobile,
    turned upon the track of defendant railway, when a car
    approaching from the opposite direction ran into and over-
    turned the horse and vehicle. Plaintiff claimed the car
    was 800 or more feet distant and could have been stopped
    or checked in time to have averted the collision. While
    his evidence on this issue was disputed by defendant, the
    motorman gave evidence that the car was 300 to 400 feet
    away when the horse went upon the track and was going
    at a speed of 35 to 40 miles an hour. There was testimony

tending to show that the motorman made no effort to check the speed of the car as he approached. The car went about 100 feet after it hit the horse. *Held*, that the issues of proximate cause and intervening negligence were correctly submitted to the jury.

5. SAME—INDEPENDENT CAUSE.

When a particular consequence results from a wrong, it may be said that the wrong is the proximate cause of the consequence, unless there intervenes between the wrong and said consequence something which may properly be denominated. a cause. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action.

Error to Wayne; Murphy, J. Submitted January 10, 1916. (Docket No. 75.) Decided March 31, 1916.

Case by Martha Walter against the Detroit, Jackson & Chicago Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* and *William G. Fitzpatrick*, for appellant.

*Dohany & Dohany*, for appellee.

KUHN, J. The accident which gave rise to this litigation occurred on June 28, 1913, on Michigan avenue, in the township of Dearborn, Wayne county. Michigan avenue is paved with concrete at this point, and lying immediately north of the concreted way, parallel thereto, and about three feet distant therefrom, is the track of the defendant railway company. Both the highway and the track are straight for a considerable distance east and west of the scene of the accident. The plaintiff was riding with her mother, Caroline Walter, who was driving a horse and a light market wagon, going in a westerly direction on the north side of the concreted highway. Approaching from the west, at a very rapid rate of speed, and likewise on the

north side of the concreted way, was an automobile which, as it came toward the rig, was directly in front of it, and continued to proceed thus until within a few feet of it, when it swung suddenly to the south, and past. The manner of this approach, or the passing, or both, caused the horse to take fright and precipitately turn toward and proceed upon the defendant's track. At this time one of the defendant's freight cars was approaching from the west at a rate of speed estimated to be from 35 to 40 miles an hour, and although the plaintiff's mother tried to get the horse back off the track, it was struck and killed by the car, and both women were thrown from the wagon and injured. The plaintiff brought suit, and on the trial in the court below the jury rendered a verdict for the plaintiff in the sum of $600, upon which judgment followed. It was the claim of the plaintiff on the trial that the case, on the evidence, was one for the jury as to whether the motorman used reasonable diligence in an attempt to stop the car in time to avert a collision, and by her declaration gross negligence was charged. It is the claim of the defendant that on the evidence no issue was presented to submit to the jury, and that it affirmatively appeared that the motorman kept a perfect lookout, made every humanly possible effort to stop the car and that the proximate cause of the plaintiff's injury was the negligent approach of the automobile which frightened the horse and caused it unexpectedly to go upon the track. A motion for a new trial was made and denied, exceptions were taken, and the cause was removed to this court on error.

The plaintiff's counsel served a subpœna on the motorman, and he was put on the stand in support of the plaintiff's case. After he had been asked a few preliminary questions, plaintiff's counsel announced that the witness was called under Act No. 307, Pub. Acts 1909 (3 Comp. Laws 1915, § 12554), and defend-

ant's counsel claim that the right to examine the witness by virtue of the act in question was waived because of the failure to make the announcement of the claim to examine under the provisions of the act, either before or at the time the witness was put upon the stand. The questions that had been asked at the time the announcement was made by counsel were simply preliminary questions, and the main facts involved in the controversy had not been gone into. We do not think there is any merit in the contention that the failure to sooner announce the claim to the benefit of the statute constituted a waiver of such benefit, though undoubtedly the better practice would be for counsel to make such announcement at the time the witness takes the stand and is sworn.

The motorman testified that when he first saw the horse turn on the track, it was between 300 and 400 feet away, and that he immediately shut off the power and applied the brakes, which were in good working order, but did not use sand nor reverse his motor. He claimed that what he did was all that could be done to bring his car to a stop in the shortest possible distance, under the conditions which prevailed that day, and that the car went about 100 feet after it struck the horse before he brought it to a stop. He further testified that at the rate the car was going (between 35 and 40 miles an hour) he was able to stop the car within 400 feet.

The plaintiff's mother testified that when the horse got on the track she judged the car was between 700 and 800 feet away. She was also asked the following question: "From the time you saw the street car up to the time it hit your horse, did it slacken its speed at all?" and made answer, "Never." This answer was objected to on the ground that it was not shown that the witness had any opportunity of observing. The

witness did not attempt to testify as to the rate of speed of the car, but simply stated that the car did not slacken its speed. In our opinion, it is not necessary for a reasonably intelligent person to show any particular qualification to testify that a car did not slacken its speed, which under ordinary circumstances is not a difficult matter to determine. It can be argued with force that her attention would have been rather directed to the horse, which she was trying to get off the track, and that she could not have given much time to observing the approach of the car. But she testified that she did, and the value of her testimony, under all the circumstances, was for the jury to determine.

If the jury accepted the testimony of the plaintiff's mother rather than the testimony of the motorman, it seems clear that the motorman, under his own testimony as to the distance in which he could stop the car under the conditions prevailing, could have effected a stop in time to avoid collision. The learned trial judge, in denying a motion for a new trial, said:

"This collision occurred on a track at a point where a clear and unobstructed view could be had for a distance practically as far as the eye can see along a highway. There was nothing to prevent the motorman having a view of the horse from the moment it entered upon the street railway tracks. If then a space of 700 to 800 feet intervened from the place where the horse jumped upon the tracks, and the position occupied by the car at that precise moment, the question arises, does the record, as it now stands, show that the motorman could, and should, have brought his car to a stop within that distance in time to have avoided a collision? Giving him the benefit of the maximum distance which he says his car traveled before he could effect a stop by using all means at his command so to do, there remains a space of at least about 150 feet which might have been utilized in the endeavor to stop the car, and which would appear not to have been availed of if the plaintiff's theory is accepted."

In *Fike* v. *Railroad Co.*, 174 Mich. 167 (140 N. W. 592), we approved the following rule as to gross negligence:

"It is gross negligence where the wrongdoer, by the exercise of the most ordinary care, should have known of the precedent negligence of the plaintiff and of his peril, and subsequently does him an injury. Baldwin on Personal Injuries, § 138. Gross negligence, therefore, may be: (*a*) A deliberately wilful act; (*b*) an act so reckless as to be akin to wilful, and therefore presumed in law to be wilful; (*c*) a failure to exercise ordinary care to prevent injury to another, after his peril is, or should have been, discovered in the exercise of ordinary care. Such failure to exercise ordinary care to prevent injury is so reckless that the law presumes it to be wilful; wilfulness or deliberate intent may be inferred from all of the circumstances."

We think that the facts clearly presented a question for the jury, under the authorities. *Laethem* v. *Railway Co.*, 100 Mich. 297 (58 N. W. 996); *McClellan* v. *Railway Co.*, 105 Mich. 101 (62 N. W. 1025); *Manor* v. *Railway Co.*, 118 Mich. 1 (76 N. W. 139); *Tunison* v. *Weadock*, 130 Mich. 141 (89 N. W. 703); *Quirk* v. *Railway*, 130 Mich. 654 (90 N. W. 673); *Boettcher* v. *Railway Co.*, 131 Mich. 296 (91 N. W. 125); *Bedell* v. *Railway*, 131 Mich. 668 (92 N. W. 349); *McVean* v. *Railway*, 138 Mich. 263 (101 N. W. 527); *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741); *Morse* v. *Railway Co.*, 168 Mich. 99 (133 N. W. 935); *Hibbler* v. *Railway*, 172 Mich. 368 (137 N. W. 719); *Good Roads Construction Co.* v. *Railway Co.*, 173 Mich. 1 (138 N. W. 320); *Weitzel* v. *Railway*, 186 Mich. 7 (152 N. W. 931); *Huff* v. *Traction Co.*, 186 Mich. 88 (152 N. W. 936); *Millette* v. *Railway*, 186 Mich. 634 (153 N. W. 10).

It is also claimed that a verdict should have been directed because the negligence of the defendant was not the proximate cause of the plaintiff's injury. In

this case the defendant's alleged negligence consisted of the failure of its motorman to make a seasonable and proper effort to stop the car after the plaintiff's perilous position was or should have been discovered. In *Stoll* v. *Laubengayer*, 174 Mich. 701, 706 (140 N. W. 534), we quoted with approval from *Iamurri* v. *Gas Co.*, 148 Mich. 27 (111 N. W. 884):

"When a particular consequence results from a wrong, it may be said that the wrong is the proximate cause of that consequence, unless there intervenes between the wrong and said consequence something which may properly be denominated a cause. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. It is in such a case a condition and not a cause."

It is clear that in the instant case the alleged negligence of the defendant's motorman intervened between the scaring of the plaintiff's horse by the automobile and the injury, and must therefore be said to have been properly denominated the cause of the accident.

An examination of the charge of the court shows that the theories of the parties were clearly presented to the jury, with proper instruction as to the law, and we are not convinced that there was any error committed. We are also convinced that there was sufficient evidence to sustain the verdict, and that it was not error for the court to deny the motion for a new trial, made on the ground that the verdict was contrary to the weight of the evidence.

Judgment is affirmed.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.