GEORGE PERKINS v. SPRAY WOOD & COAL COMPANY AND HEDRICK
CONSTRUCTION COMPANY.

(Filed 6 May, 1925.)

**1. Employer and Employee—Master and Servant—Negligence—Evidence.**

The plaintiff was a laborer employed by a construction company in
placing dirt upon a public highway being built by his employer, which
was excavated by a heavy steam shovel operated by an independent
company, and received the injury in suit while acting at the request of
the one operating the shovel in placing logs for the safe passage of the
shovel on the road whereunder was placed a drain pipe, as the shovel
was being taken from one locality to another to resume its work: *Held*,
the plaintiff, under the circumstances, is to be regarded as an employee
of the defendant company operating the steam shovel, to the extent
stated, who owed him the nondelegable duty to furnish him a safe place
to work.

**2. Same—Emergency—Trespasser—Volunteer.**

A third person may render services to another at the request of the
latter's employee having charge of its work under an emergency that
renders the person performing such service also an employee and not a
mere volunteer or trespasser.

**3. Same—Safe Place to Work—Nondelegable Duty—Fellow-Servant.**

Where an employee is injured by the negligence of the employer in
failing to furnish him a safe place to work, the duty being nondelegable,
the latter may not avoid liability on the ground that the injury was
caused by a fellow-servant of the plaintiff, when an exercise of ordinary
care on the employer's part, or on the part of the one having charge of
the work, would have prevented it.

**4. Damages—Negligence—Evidence.**

Upon the issue of damages recoverable by an employee for injuries
negligently and proximately caused by his employer, it is *held*, under
the facts of this case, that evidence of the amounts charged by the hos-
pital where the surgical operation had been performed on plaintiff, in
consequence of the injury, doctors' bills and charges for like treatment
or services, was properly admitted on the trial.

APPEAL by defendant, Hedrick Construction Company, from judg-
ment of *Finley, J.*, at November Term, 1924, of ROCKINGHAM.

Action to recover damages for personal injuries sustained by plaintiff
while at work beneath a steam shovel owned and operated by defendant,
Hedrick Construction Company.

On 11 December, 1923, plaintiff was an employee of defendant, Spray
Wood & Coal Company; said company, in performance of its contract
with the Board of Commissioners of Rockingham County, was engaged
in the construction of a road near Spray, in said county; plaintiff's

PERKINS v. WOOD & COAL CO.

duty was to spread and level, with a shovel, dirt hauled in wagons from excavations made in the construction of said road and unloaded or dumped from the wagons on the road, in rolls or ridges.

Defendant, Hedrick Construction Company, had entered into a contract with its codefendant, Spray Wood & Coal Company, by which it undertook to make the excavations required by means of a steam shovel, and to haul the dirt taken from the excavations, by wagons, to places on the road, where it was to be spread or used in making fills. Hedrick Construction Company owned and furnished the steam shovel, wagons and teams, and employed the men required to perform the contract. Plaintiff and another laborer were employed by Spray Wood & Coal Company solely for the purpose of receiving the dirt after it had been excavated and hauled by the Hedrick Construction Company and unloaded or dumped from the wagons. The men engaged in operating the steam shovel and in driving the team and hauling the dirt were employees of the Hedrick Construction Company, while plaintiff and his colaborer were employees of Spray Wood & Coal Company. This latter company did not employ and had no control over the men operating the steam shovel or driving the wagons; the Hedrick Construction Company did not employ and had no control over plaintiff and his colaborer.

During the afternoon of 11 December, 1923, the steam shovel had completed the excavation in the place at which it had been at work. All the dirt from this place had been hauled and disposed of by plaintiff. The operator of the steam shovel was moving it to another place, on or near the road, where the work of excavation was to be resumed. A pipe line which had not been completely covered was across the fill over which the steam shovel was to be moved. The steam shovel was very heavy. The weight of the dipper and lead was two or three tons. Apprehending that the steam shovel, because of its weight and construction, would crush and injure this pipe line, the operator requested plaintiff and his colaborer to get a couple of logs and place them beside the pipe line to protect it as the steam shovel passed over it. Plaintiff was not at the moment engaged in work for his employer, Spray Wood & Coal Company, but was waiting for defendant, Hedrick Construction Company, to resume the work of excavating and hauling dirt. Plaintiff and his colaborer complied with the request of the operator and got the logs. Plaintiff went under the steam shovel to place the log beside the pipe line, and as he did so he saw the fireman on the shovel. The operator was standing beside the levers which were used to control the machine. The dipper was raised eight or ten feet above the ground and held in place by a clutch. While plaintiff was

beneath the shovel, placing the log, the dipper fell, striking him and crushing him to the ground. Plaintiff sustained serious and permanent injuries.

While plaintiff was placing the log under the shovel, in order that it might be moved across the pipe line without injury, a driver of one of the wagons used by the Hedrick Construction Company went upon the platform of the steam shovel and accidentally stepped upon the clutch which held the dipper, thereby causing the dipper to fall and injure plaintiff. After the dipper fell, the operator climbed back into the cab, pushed the fireman away, and, by operating the levers on the platform, pulled the dipper up, thus releasing plaintiff. He was a competent operator and had charge of the steam shovel for defendant; the steam shovel was in good condition.

At the close of the evidence for the plaintiff, the court allowed motion of defendant, Spray Wood & Coal Company, for judgment as of nonsuit. Defendant, Hedrick Construction Company, offered no evidence. The issues submitted to the jury, with answers, are as follows:

1. Was the plaintiff injured by the negligence of defendant, Hedrick Construction Company, as alleged in the complaint? Answer: Yes.

2. What damages, if any, is plaintiff entitled to recover of defendant, Hedrick Construction Company? Answer: $5,000.

From judgment in accordance with verdict, defendant, Hedrick Construction Company, appealed to the Supreme Court, assigning errors based on exceptions duly noted.

*D. F. Mayberry and Brooks, Parker & Smith for plaintiff.*
*W. H. Beckerdite and Swink, Clement &. Hutchins for defendant.*

CONNOR, J. Appellant, Hedrick Construction Company, upon its appeal in this case, relies upon three contentions, discussed in the brief filed in this Court, each of which is presented by assignments of error, based upon exceptions appearing in the statement of the case on appeal. Appellant did not offer evidence upon the trial. The issues were submitted to the jury solely upon the evidence offered by plaintiff. There is no serious controversy as to the facts, which this evidence tends to establish.

The first contention is that there was no evidence of actionable negligence on the part of the appellant. This Court has said, in *Ramsbottom v. R. R.*, 138 N. C., 39, in the opinion written by *Justice Hoke*, that "to establish actionable negligence, the question of contributory negligence being out of the case, the plaintiff is required to show, by the greater weight of the evidence, first, that there has been a failure to exercise proper care in the performance of some legal duty which

the defendant owed the plaintiffs under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under the circumstances and charged with a like duty; and second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." This definition has been cited with approval in opinions of this Court in numerous cases. See 2d Anno. Ed.

Plaintiff was injured by the falling of the dipper upon him while he was beneath the steam shovel, at work as requested by the operator who was the employee of defendant in charge of the steam shovel; the dipper fell because the clutch which held it up, some eight or ten feet above the ground, was released by a driver of one of the wagons, also an employee of defendant, who, while on the platform of the shovel, accidentally stepped upon it. Was this admitted cause of plaintiff's injury due to a breach of a legal duty which defendant owed to the plaintiff at the time of or immediately before the plaintiff was thus injured? If so, was such breach of duty the proximate cause of the injury—the cause that produced the result in continuous sequence, and without which it would not have occurred? Was it such a cause as a man of ordinary prudence could have foreseen would, under all the facts existing, probably produce such result? There is no plea and no contention that plaintiff, by his own negligence, contributed to his injury.

The degree of care which defendant owed plaintiff must be determined by the circumstances in which plaintiff and defendant were placed with respect to each other. Defendant's duty to plaintiff must be determined by the relation which they bore, each to the other.

Plaintiff, prior to the request of the operator of the steam shovel that he get a log and place it beside the pipe line in order that the steam shovel might pass over without injuring it, was not an employee or servant of defendant. Defendant owed him no duty other than not to wantonly or wilfully injure him. There is no evidence from which the jury could find that the operator had any express authority from defendant to hire or employ any one to aid or assist him in doing the work for which the operator was employed by defendant. The operator, however, in charge of the steam shovel was confronted by a situation in which, in order to perform his duty to his employer safely and without subjecting his employer to loss or liability, it was necessary, or at least greatly to the advantage of his employer, that he have assistance in moving the steam shovel without injury to the pipe line, in order that

he might continue his work. In this situation he called upon plaintiff for assistance, and plaintiff, not being then engaged in the performance of any duty which he owed his employer, the Spray Wood & Coal Company, but interested as such employee in the expeditious moving of the steam shovel to the new "cut," responded. While rendering this assistance, plaintiff was a servant or employee of defendant, at least to the extent that defendant owed him the duty of providing a reasonably safe place in which to work. Under the facts and circumstances, as established by the evidence in this case, the operator of the steam shovel had implied authority from defendant to call upon plaintiff to render the assistance requested. The assistance requested was incidental to the work for which the operator was employed by defendant. Plaintiff, being interested as an employee of the Spray Wood & Coal Company that the work for which his assistance was requested should be done, without delay, was not a meddler, or a trespasser or a mere volunteer when he complied with the request. He was a servant or employee of defendant, and as such was entitled to the rights and the protection due a servant or employee.

In *Vassor v. R. R.,* 142 N. C., 68, this Court, discussing the authority of a railroad conductor in charge of a train, cites with approval section 302 of Elliott on Railroads, in which it is said that the authority of a conductor does not ordinarily extend to making contracts on behalf of the company, but that there may be cases of urgent emergency where he may make a contract for the company. In that case it was held that the conductor had no authority to employ plaintiff, and that therefore the railroad company did not owe to plaintiff any of the duties due by a master. The writer of the opinion emphasizes, it seems, the fact that there was no emergency, or situation rendering it necessary for the conductor to have assistance; nor does it appear that plaintiff had any interest, personal or otherwise, in the work which he testified that he had undertaken at the time he was injured. It is said in the opinion that the authorities are to the effect that the burden was on the plaintiff to establish the authority of the conductor to hire or employ him in behalf of the company. In his concurring opinion *Justice Hoke* dissents from this holding, and says: "I am of the opinion that where a conductor of a freight train employs an ordinary hand to assist in the operation of his train, the presumption should be that his act is rightful until the contrary is made to appear." Where an employee in charge of work for his employer, in the absence of the employer and so situated that he cannot communicate with him, is confronted with an emergency which makes it necessary or greatly to his employer's interest, to make a contract either for material or labor, in order that the work for which he is employed may proceed, it seems that the employer is bound by the

contract, although there is no express authority from the employer to make the contract in his behalf. The fact that the employer is not only absent, but cannot, because of distance or other circumstances, be communicated with, together with the further fact that the material or labor contracted for is incidental to the work which it is the duty of the employee to do, should be considered in determining whether authority to make the contract to meet the emergency is to be implied."

In *Maxson v. J. I. Case Threshing Machine Company,* 81 Neb., 546, 16 L. R. A. (N. S.), 963, it is held that if an agent is given sole charge of cumbersome and complicated machinery and calls to his assistance, in performing the duties of his employment, one who in good faith enters upon such work, the person thus employed is not a volunteer or trespasser, but for the time being assumes the relation to the owner of the machinery, in whose interest it is being used, of servant and master. See *Grissom v. Atlanta & Birmingham Air Line Railway,* 13 L. R. A. (N. S.), 561 and notes.

Plaintiff was, therefore, the servant or employee of defendant while engaged in the performance of the work which he was requested to do by the operator of the steam shovel. Because of this relationship, the measure of duty which defendant owed plaintiff was not limited to merely refraining from wantonly and wilfully injuring him. This is not the standard of duty required by the law of defendant to plaintiff, under the circumstances. Defendant owed plaintiff the duty of providing a reasonably safe place in which to do the work, which he had undertaken. It was necessary for plaintiff to go under and work beneath the steam shovel. The dipper, which was movable, was drawn up, by mechanical power, eight or ten feet. It was held in this position by the clutch. This clutch was so constructed that it could be released by a person accidentally stepping upon it. This fact was necessarily known to defendant and the operator of the steam shovel. It was not due to any latent defect in the clutch, or to any defect in the machinery. It was due to the construction of the steam shovel. If accidentally released, the dipper would necessarily fall and strike any one beneath it. Under the circumstances, it was the duty of defendant to guard the machinery while plaintiff was beneath the shovel, to prevent such an accident. If properly guarded, while plaintiff was beneath it, no one would have been permitted to go upon the platform, and by accident or otherwise, cause the dipper to fall.

In *Taylor v. Power Co.,* 174 N. C., 583, *Justice Walker* says that if defendant allowed an elevator to descend while plaintiff was at work underneath it, and after he had been induced to believe by previous conduct that it would not be moved, and he was thereby injured, the negligence is clear. In *Steele v. Grant,* 166 N. C., 635, it is held that

"the duty of the master to provide reasonably safe tools, machinery, and place to work does not go to the extent of a guarantee of safety to employee, but does require that reasonable care and precaution be taken to secure safety, and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though, is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintaining them in such condition as to afford reasonable protection to the servant against injury." There is evidence of actionable negligence on the part of defendant, and same was properly submitted to the jury.

The second contention of defendant is that plaintiff was injured by the negligence of a fellow-servant for whose negligence defendant was not responsible in damages. Defendant's liability to plaintiff is not dependent on the conduct of the driver of the wagon, who went upon the steam shovel, and accidentally stepped on the clutch, thus releasing the dipper. The negligence relied upon is the failure of defendant, while plaintiff was at work for it in a place, inherently dangerous, to keep and maintain the machinery and apparatus which made the place dangerous in such condition as to afford reasonable protection to the servant against injury. The duty to do this was nondelegable. It was for the jury to say whether upon all the evidence there had been a breach of this duty.

The driver of the wagon, who accidentally stepped upon and released the clutch, thus causing the dipper to fall and injure plaintiff, and plaintiff, at time of his injury, were both servants of defendant. Neither had any power or control over the other. Both were serving a common master, and were engaged in the same general business for defendant. It does not appear, however, that the driver of the wagon had any duty, by virtue of his employment by the common master, which required him to go upon the steam shovel. He was not engaged in the performance of any duty to his master when he accidentally stepped upon the clutch. His act in going upon the steam shovel was without authority, express or implied, from defendant. In its brief, defendant says that the driver "sneaked up" on the operating platform. It was the duty of defendant to prevent just such an act, while plaintiff was at work under the shovel.

In *Michaux v. Lassiter,* 188 N. C., 132, a judgment of nonsuit was sustained. In that case, plaintiff's intestate was at work for defendant, on the ground, beneath a mixer or road paver. The pan dropped from its place, and crushed intestate so that he died in a few moments. This Court held that upon the facts in evidence there was no permissible

inference of an actionable breach of duty on the part of defendant. The injury was necessarily attributable and attributable only to an exceptional negligent act of the operator of the machine, who was a fellow-servant of intestate.

In this case, plaintiff was a servant of defendant for a special purpose. He was interested, as an employee of Spray Wood & Coal Company, that defendant should not be delayed or hindered in moving the steam shovel to the new "cut." He was waiting for defendant to resume the work of excavating and hauling dirt, before resuming himself the work for which he was employed by Spray Wood & Coal Company. In this situation, it has been held that he was not, while assisting the operator of the steam shovel, a fellow-servant of the employees of defendant; *O'Donnell v. Maine Central R. R. Co.,* 81 Maine, 552, 25 L. R. A., 658. Defendant's second contention cannot be sustained.

Defendant's third contention is that there was error in permitting plaintiff to testify as to bills due the hospital, doctors and drug store, which were unpaid, and in submitting this evidence to the jury upon the issue of damages.

Plaintiff was injured in December, 1923; he had a wife and three children; he was receiving, at the time of his injury as wages $3.00 per day. As a result of his injury, he has lost the use of one arm. He was in a hospital 64 days, and was at his home 41 days before he could turn over in bed. During all that time he was in a plaster cast. At the trial in May, 1924, he testified that he suffered pain all the time. The doctor split his leg, took out the bone and put another bone in its place. This slips as he walks. The leg stays cold all the time. He testified that his hospital bill was $346, his doctor's bill and drug-store bill $300. He further testified that he had not paid these bills, for the obvious reason that he had not been able to do so. He testified that he had promised to pay these bills. Defendant's objection to this testimony was properly overruled. The exception is not sustained.

His Honor properly submitted this evidence to the jury, for their consideration, upon the second issue.

Upon the facts found by the jury from the evidence in this case, and under the law applicable to these facts, plaintiff has recovered judgment against defendant for $5,000, as damages caused by the failure of defendant to perform a duty which the law in this State, by reason of the facts and circumstances surrounding plaintiff and defendant, at the time of the injury, imposed upon defendant.

Upon appeal we find no error in the trial and the judgment must be affirmed.

No error.