MRS. PEARL M. REA, ADMINISTRATRIX OF THE ESTATE OF JOYCE REA. DECEASED, v. SAMUEL S. SIMOWITZ, J. S. SIMOWITZ, BERNARD SIMOWITZ AND ISRAEL D. SHAPIRO, T/A NATIONAL EXPRESS, AND ROBERT WILLIAMS.

(Filed 21 November, 1945.)

**1. Evidence § 37: Death § 8—**

Mortuary tables are used as the best evidence obtainable, together with evidence of health, habits and the like, in the establishment of material but necessarily uncertain facts.

**2. Evidence § 27—**

Our mortuary table, G. S., 8-46, is not founded on any statistical information based on experience concerning children under ten years of age and it does not give or purport to give the probable expectancy of life of such infants. Hence as to them it is irrelevant.

**3. Death § 8—**

Before G. S., 8-46, may be considered by a jury there must be precedent proof of age, bringing the deceased clearly within the class of selected lives tabulated in the table. In the absence of such proof it is error to direct a jury to consider it.

**4. Same: Evidence §§ 27, 37—**

In a case involving the expectancy of one, not within the class of selected lives tabulated in G. S., 8-46,. the jury may consider evidence as to the constitution, health, vigor, habits and the like of deceased as a basis for determining his probable expectancy; and upon proper identification and authentication other available tables, which list the ages involved, may be used in evidence.

**5. Negligence §§ 1a, 19a—**

There are no degrees of care so far as fixing responsibility for negligence is concerned. The standard is always that care which a man of ordinary prudence should use under like circumstances. But a prudent man increases his watchfulness as the possibility of danger mounts. Thus the degree—that is the quantity—of care necessary to measure up to the standard is as variable as the attendant circumstances.

6. **Negligence § 19a—**

> The degree of care required, under the particular circumstances, to measure up to the standard is for the jury to decide.

APPEAL by defendants from *Phillips, J.,* at March Term, 1945, of MECKLENBURG. New trial.

Civil action to recover damages for wrongful death resulting from the negligent operation of a truck.

Defendant Williams was an employee of the defendant partnership. On 13 September, 1944, he, in the regular course of his employment, was operating a truck of the tractor-trailer type in the City of Charlotte. The truck was loaded to full capacity—20,000 pounds. It had a 134-inch wheelbase, was 95 inches wide and 318 inches long. He was proceeding west on Palmer Street. He made a right-hand turn into Graham Street. To do so, due to the size and length of the truck and the width of the streets, it was necessary for him first to turn to the left of Palmer Street and then cut to the right. In making the turn the right rear wheel ran across the northeast corner of the intersection. At the time the truck passed deceased and a companion were standing on the sidewalk at or near the curb at the northeastern intersection. Some part of the side of the truck struck deceased and knocked her in the street. The rear wheel ran over her body. She died as a result of the injuries sustained.

Defendant Williams testified he saw the two girls standing still at the corner at or about the time he began his turn into Graham Street. He was not aware of the fact he struck deceased. The deceased was nine years of age at the time of her death.

Issues of (1) negligence and (2) damages were answered in favor of plaintiff. From judgment on the verdict defendants appealed.

*G. T. Carswell, John M. Robinson, and Hunter M. Jones for plaintiff, appellee.*

*Jones & Smathers for defendants, appellants.*

BARNHILL, J. Counsel for defendants, exercising the care of diligent attorneys, duly entered motions to dismiss as in case of nonsuit. Having examined the record in the calm which follows the heat of battle, they frankly admit the evidence of negligence was such as to require its submission to a jury and abandon their exceptions to the refusal of the court below to dismiss.

They now rely principally on exceptions to the charge of the court. These exceptions present two questions which require discussion: (1) Is it proper or permissible for the court to instruct the jury to consider

our mortuary table in ascertaining the probable life expectancy of a child who, due to her age at the time of her death, did not come within the class of selected lives tabulated in the table; and (2) in negligence cases what standard of care is required in respect to the safety of children of tender age?

The court instructed the jury in part as follows:

"Now, this expectancy is fixed by the mortuary tables under the statute in North Carolina, but the mortuary tables must be considered in connection with other evidence as to the health, the constitution, habits of the deceased.

"Now the youngest age given in the mortuary tables is ten years, and the life expectancy fixed in the mortuary table for ten years is forty-three and seven-tenths years . . .

"In arriving at her life expectancy you will consider the mortuary tables as the Court has already instructed you."

The defendants except, contending that our mortuary table has no application where the deceased, at the time of her death, was less than ten years of age.

They cite no authority in support of their position. We have found no decision in this jurisdiction which discusses or decides the exact question thus presented. Apparently it is in this respect a case of first impression.

Elsewhere there is a conflict of judicial opinion as to the use of mortality tables as an aid in determining the life expectancy of a young child whose age is not tabulated therein.

The rule excluding the consideration of such tables is based upon the ground that the rate of mortality of children of tender years is known to be greater than it is among children of more advanced age, and that hence a table covering the life expectancy of older children would not be a guide as to the life expectancy of a younger child and it might be misleading. *Rajnowski v. Detroit, B. C. & A. R. Co.,* 41 N. W., 847, 74 Mich., 20; *Decker v. McSorley,* 86 N. W., 554, 111 Wisc., 91; *Morse v. Detroit, G. H. & M. Ry. Co.,* 133 N. W., 935, 168 Mich., 99; *Atlanta St. Rwy. Co. v. Beauchamp,* 93 Ga., 6; *Macon, D. & S. R. R. Co. v. Moore,* 99 Ga., 229.

Our mortuary table, G. S., 8-46, is nothing more nor less than one of the prevailing mortality tables put into statutory form so as to permit its use without formal proof.

These mortality tables, usually prepared primarily for the guidance of insurance companies, as a rule are based upon a record, extending over a period of years, of the deaths among a stated number of people, chosen without reference to their age, health, or occupation, the number of

people included and the period of time covered by the record being sufficient to be fairly representative.

Thus these tables are tables showing the average expectancy of life of normal persons at different ages and consist of summarized statistical information based on experience concerning persons of the ages listed. They are used as the best evidence obtainable, together with evidence of health, habits and the like, in the establishment of a material but necessarily uncertain fact. Uncertain and unsatisfactory as such test, drawn from the general duration of life, must be when applied to an individual case, it is better than the uninstructed guess of a jury.

Infant mortality is a matter of common knowledge. Those at all versed in the science of longevity know that the chance of an infant to reach a remote period of existence is uncertain and grows with increasing age until he has passed the period when certain diseases are most apt to strike.

Our table is not founded on any statistical information based on experience concerning children under ten years of age and it does not give or purport to give the probable expectancy of life of such infants. Hence as to them it is irrelevant.

Before it may be considered by a jury there must be precedent proof of age, bringing the deceased clearly within the class of selected lives tabulated in the table. *Atlanta St. Rwy. Co. v. Beauchamp, supra.* In the absence of such proof it is error to direct the jury to consider it.

This does not leave plaintiff destitute of proof. The jury may consider evidence as to the constitution, health, vigor, habits and the like of the deceased as a basis for determining her probable expectancy of life. 20 Am. Jur., 823. Furthermore, there are other available mortality tables which list ages below ten years. Upon proper identification and authentication such tables may be used in evidence. 20 Am. Jur., 821, 822.

The court in its charge defined ordinary care as being that degree of care which a prudent man would use under like circumstances and when charged with a like duty. It then instructed the jury that the driver of the vehicle "is charged with a greater degree of care" and must "use more than ordinary care . . . exercise more than ordinary care" for the safety of children than for adults. When the use of this language was called to its attention at the conclusion of its charge the court then said to the jury: "The Court wishes to correct that and tell you that under the circumstances of a child or children being at or near the intersection, the driver of a vehicle approaching the intersection, the Court charges you that it would be the duty of the driver to exercise a greater degree of care than he would if they were adults and those who were expected to

look after themselves." The defendants excepted and assigned the same as error.

On this record the uncontradicted evidence of negligence is such as to render the exceptive assignment of error of doubtful merit. Even so, we discuss the assignment for the reason it is evident the court below was misled by the opinion in *Goss v. Williams,* 196 N. C., 213, 145 S. E., 169. There this Court approved a charge of the trial judge defining the duty of a motorist toward a child crossing the road in front of his automobile. In so doing, *Clarkson, J.,* writing for the Court, cited, and in part quoted the language used in, *Deputy v. Kimmell,* 80 S. E. (W. Va.), 919, where it is said :· "More than ordinary care is required in such cases."

It must be noted that this Court did not then modify, and it has never extended, the rule of the prudent man prevailing in this State.

There are no degrees of care so far as fixing responsibility for negligence is concerned. The standard is always that care which a prudent man should use under like circumstances. Negligence is the doing other than, or failing to do, what a reasonably prudent man would have done under the same or similar circumstances. In short, negligence is a want of due care; and due care means commensurate care, under the circumstances, tested by the standard of reasonable prudence and foresight. *Moore v. Iron Works,* 183 N. C., 438, 111 S. E., 776; *Helms v. Power Co.,* 192 N. C., 784, 136 S. E., 9. The legal duty, the breach of which will impose liability (provided it is the proximate cause of injury to the person or damage to the property of another), is the duty to exercise that degree of care which a prudent man would have used under the same or similar circumstances when charged with a like duty. . This is the invariable standard of care applicable in all negligence cases.

But a prudent man increases his watchfulness as the possibility of danger mounts. So then the degree of care required of one whose breach of duty is very likely to result in serious harm is greater than when the effect of such breach is not nearly so great.

Thus, the degree—that is the quantity—of care necessary to measure up to the standard is as variable as the attendant circumstances. That degree of care which a man of ordinary prudence would exercise under the circumstances may mean nothing more than care not to willfully or wantonly injure, *Dunn v. Bomberger,* 213 N. C., 172, 195 S. E., 364, or it may mean "the utmost degree of care," *Haynes v. Gas Co.,* 114 N. C., 203, "the highest degree of care," *Turner v. Power Co.,* 154 N. C., 131, 69 S. E., 767, or "the greatest degree of care," *McAllister v. Pryor,* 187 N. C., 832, 123 S. E., 92. Hence the quantity of care required to meet the standard must be determined by the circumstances in which plaintiff and defendant were placed with respect to each other. And whether defendant exercised or failed to exercise ordinary care as understood and

defined in our law of negligence is to be judged by the jury in the light of the attendant facts and circumstances. *Perkins v. Wood & Coal Co.,* 189 N. C., 602, 127 S. E., 677.

In short, the standard of care is a part of the law of the case for the court to explain and apply. The degree of care required, under the particular circumstances, to measure up to the standard is for the jury to decide.

The disposition we have made of this appeal renders it unnecessary for us to discuss other exceptive assignments of error appearing in the record.

For the reasons stated there must be a

New trial.