SEAWELL, J., dissents.
Civil actions by H. A. McKinnon and Robert H. McKinnon, father and son, for damages to the father's automobile and for personal injuries to the son when the father's car, driven at the time by the son on Highway No. 27 in Montgomery County, ran into the rear of a truck and trailer owned by Howard Motor Lines, Inc., and operated at the time by an employee, Robert Lee McFadden, it being alleged that the damages in both instances were caused by the negligence or default of the defendants. As both actions arise out of the same circumstances and rest upon the same evidence, by consent, they were consolidated and tried as one case.
Leaving home about dark on the evening of 9 October, 1945, Robert McKinnon, with the knowledge and consent of his father, drove the latter's 1942 model two-door Ford Sedan from Biscoe to Troy, where Miss Jean Nance joined him, and they then started on their way to Mt. Gilead, traveling over Highway No. 27, when the accident under investigation occurred. In front of them, and proceeding in the same direction, was the combination truck and trailer of the corporate defendant, in control of its agent and employee, Robert McFadden. When about a mile and one-half out from Troy, some difficulty developed in the gas feed line of defendant's tractor, necessitating a stop and a switch to an auxiliary gas tank. Just as the tractor was being brought to a stop, or came to a standstill, the McKinnon car ran into the rear of the defendant's trailer, striking it with sufficient force to jam the plaintiff's car some three feet under the rear of the trailer and to push both tractor *Page 134 
and trailer, weighing approximately 13,000 pounds, a distance of three feet up the slight incline of the road. The plaintiff's car was practically demolished, and both occupants sustained serious and permanent injuries.
The scene of the accident was on a straight stretch of road, with the paved portion approximately 22 feet wide. The defendant's equipment was on its right-hand side of the pavement. The witnesses are in disagreement as to whether the clearance lights and rear lights on the defendant's trailer were burning. One passing motorist said the head lights on the tractor were blinking, i.e., giving the truck driver's signal of distress. But the witness saw no running lights or rear lights on the stalled vehicle. The trailer was of stainless steel, marred by dust and dirt, which rendered it about the color of the pavement. The reflectors on the back were covered with dust, if there were any, and the floor of the trailer was elevated from 3 to 3 1/2 feet above the surface of the road.
As the McKinnon car approached the defendant's truck from the rear, there were at least three vehicles — a truck followed by two automobiles — traveling on the other side of the road and headed in the direction of Troy. The head lights on these machines were lighted. The difficulty of driving under these conditions appears to have been heightened by the forward truck slowing down, driving off the hard surface, and coming to a stop about 100 years or 400 feet, after passing the stalled truck. (Whether this was in response to the signals from the stalled truck is not stated.) However, the head lights on the stalled truck and the rear lights on the other truck, together with the approaching lights on the McKinnon car, presented a situation which caused the drivers of the two cars following the truck traveling in the direction of Troy, to drive entirely off the hard surface as they passed the stalled truck in order that the McKinnon car might have the entire hard surface in passing the defendant's truck on its left.
W. C. Bagwell, who was on the truck going in the direction of Troy, estimated the speed of the McKinnon car at 65 to 75 miles per hour as it passed the truck on which he was riding. Larry Wall, the driver of the car just back of this truck, said the McKinnon car was traveling at a normal speed — not less than 30 nor more than 40 miles an hour. Both witnesses, however, thought the McKinnon car was headed for trouble. Wall says: "The Ford car passed me before it struck and was wrecked. . . . I turned around and watched the impact. Unfortunately, I saw what I was looking for."
Now, viewing the situation as it appeared to the occupants of plaintiff's car, Robert H. McKinnon testified as follows: "We were driving along on Highway No. 27 just outside of Troy where the road makes a slight dip and starts an upgrade. As we began up the grade, I saw approaching lights of the other cars. . . . I was blinded by the lights of *Page 135 
the cars meeting me. . . . I was blinded up until the time the collision happened. I never did see any other object except the approaching headlights. I was so blinded for two or three seconds. I was blinded from the time I first met the lights until the accident. I was keeping a lookout in front of me. I was trying to drive carefully. I was unable to see anything in front of me after I met the cars and had not seen the truck before I met the cars. . . . I was trying to peer through the blind spots — the spots that were brought to my eyes by meeting those lights — and I was unable to see anything immediately in front of me. . . . I'd say around 100 feet, I was completely blinded. I had not seen anything in front of me before I was blinded. . . . Shortly after I was blinded there was a crash. . . . I had taken my foot off the accelerator at the time I was blinded. . . . It was several seconds before the crash. . . . Up until two seconds before the crash I had my foot on the accelerator. . . . . I don't believe I ever put my brakes on. . . . My lights did not pick up the truck. I didn't see it. . . . I possibly was going between 31 and 39 miles an hour. . . . I know that my car hit whatever it was in the road with such force as to completely demolish the car I was driving. . . . I do not know whether I was driving on the right or left for the time I was blinded. . . . I know I was on the right-hand side of the road. I could see the right-hand edge of the road. I ran straight ahead and whatever hit me was on the right-hand side of the road. If it had been a man there, I would not have seen him. . . . I didn't stop while I was blinded. I couldn't see to proceed. . . . I never did get out of the glare of the lights. . . . I was blinded from the time I entered (the glare of the lights) until the crash. . . . I couldn't say whether any car passed me before I had the crash or whether I passed any of the cars with a light before I had the crash. I don't remember passing any. I know I was in a blinded area."
Miss Jean Nance testified that she was in the McKinnon car. "It was being operated around 35 miles an hour. . . . I saw several lights, one or more cars. . . . The cars were coming towards us. . . . The blinding lights were on the left-hand side of the road. The best I could see, there was nothing on our side of the road; nothing to obstruct the vision. . . . There were no lights on our side of the road."
Both complaints allege (1) unlawful parking (G.S., 20-134), and (2) absence of required lights (G.S., 20-129) while defendant's equipment was in operation on the highway. The court being of opinion that no violation of the parking statute had been shown, submitted the case to the jury on the second allegation of negligence only, plus the allegations of contributory negligence on the part of the driver of the McKinnon car. *Page 136 
From verdict and judgment in favor of both plaintiffs (the jury assessing the damage to the car at $1,131.72 and the extent of the personal injuries at $7,500), the defendants appeal, assigning errors.
The question for decision is whether the plaintiffs' case is uprooted by the contributory negligence of the driver of the McKinnon car as shown by his own testimony and the undisputed facts appearing of record. A careful perusal of the evidence impels an affirmative answer.
There is ample evidence tending to show negligence on the part of the defendants in operating their equipment on the highway in the nighttime without rear lamps as required by G.S., 20-129. There is also evidence of contributory negligence on the part of the driver of plaintiff's car which bars recovery. Sibbitt v. Transit Co., 220 N.C. 702, 18 S.E.2d 203;Pike v. Seymour, 222 N.C. 42, 21 S.E.2d 884; Peoples v. Fulk,220 N.C. 635, 18 S.E.2d 147; Atkins v. Transportation Co., 224 N.C. 688,32 S.E.2d 209.
Conceding the negligence of the defendants in failing to display rear lights on their slowly moving or stalled truck, nevertheless the contributory negligence of Robert H. McKinnon is manifest from his own testimony and the physical facts appearing of record. He says that he ran in a "blinded area" for two or three seconds, at a speed of 35 miles an hour and for a distance of 100 feet — other witnesses put it at 100 years or 400 feet — when he was completely blinded and could see nothing in front of him except the right-hand edge of the road. Both his vision and his prevision seem to have failed him at one and the same time. Such is the stuff of which wrecks are made. The conclusion seems inescapable that the driver of the McKinnon car omitted to exercise reasonable care for his own and his companion's safety, which perforce contributed to the catastrophe. This defeats recovery in the instant action. Austin v. Overton, 222 N.C. 89, 21 S.E.2d 887; Powers v.Sternberg, 213 N.C. 41, 195 S.E. 88; Caulder v. Gresham, 224 N.C. 403,30 S.E.2d 312. Young McKinnon's negligence need not have been the sole proximate cause of the injury to bar recovery, because "contributory negligence" ex vi termini signifies contribution rather than independent or sole cause. Absher v. Raleigh, 211 N.C. 567, 190 S.E. 897; Fulcher v.Lumber Co., 191 N.C. 408, 132 S.E. 9. See S. v. Eldridge, 197 N.C. 626,150 S.E. 125. It is enough if the plaintiff's negligence contribute to the injury as a proximate cause, or one of them. Tarrant v. BottlingCo., 221 N.C. 390, 20 S.E.2d 565; Godwin v. R. R., 220 N.C. 281,17 S.E.2d 137; Beck v. Hooks, 218 N.C. 105, *Page 137 10 S.E.2d 608; Wright v. Grocery Co., 210 N.C. 462, 187 S.E. 564. The plaintiff may not recover, in an action like the present, when his negligence concurs with the negligence of the defendant in proximately producing the result. Davis v. Jeffreys, 197 N.C. 712, 150 S.E. 488;Construction Co. v. R. R., 184 N.C. 179, 113 S.E. 672.
The cases cited by plaintiffs, Hobbs v. Drewer, 226 N.C. 146,37 S.E.2d 121; Cummins v. Fruit Co., 225 N.C. 625, 36 S.E.2d 11, are distinguishable by reason of factual differences.
The correctness of the ruling in withdrawing the allegation of unlawful parking is not presented for review. The plaintiffs won below and they are not appealing.
The motion for judgment of nonsuit should have been allowed. Elder v. R.R., 194 N.C. 617, 140 S.E. 298.
Reversed.
SEAWELL, J., dissents.