73 S.E.2d 296 (1952)
236 N.C. 477
MORGAN
v.
COOK et al.
No. 383.
Supreme Court of North Carolina.
November 19, 1952.
*298 Ottway Burton, Asheboro, for plaintiff-appellant.
Smith & Walker, Asheboro, for defendants-appellees.
DENNY, Justice.
The plaintiff drove his automobile more than 1,300 feet while he was blinded by the lights of the defendants' oil truck. According to his evidence, while he was traveling this distance he was so "blinded" he could see nothing in his lane of traffic. Yet he proceeded until he got even with the truck, "tapped the gas to go on through," and was within 12 or 15 feet of the tractor-trailer which was across his lane of traffic, before he "was first able to see it." He says he was going about 35 miles an hour when the collision occurred.
Conceding the negligence of the defendants in the respects alleged, nevertheless the contributory negligence of the plaintiff is manifest from his own testimony. Morris v. Jenrette Transport Co., 235 N.C. 568, 70 S.E.2d 845; McKinnon v. Howard Motor Lines, 228 N.C. 132, 44 S.E.2d 735; Riggs v. Gulf Oil Corp., 228 N.C. 774, 47 S.E.2d 254; Tyson v. Ford, 228 N.C. 778, 47 S.E.2d 251; Atkins v. White Transportation Co., 224 N.C. 688, 32 S.E.2d 209; Pike v. Seynour, 222 N.C. 42, 21 S.E.2d 884; Austin v. Overton, 222 N.C. 89, 21 S.E.2d 887; Dillon v. Winston-Salem, 221 N.C. 512, 20 S.E.2d 845; Sibbitt v. R. & W. Transit Co., 220 N.C. 702, 18 S.E.2d 203; Beck v. Hooks, 218 N.C. 105, 10 S.E.2d 608; Powers v. S. Sternberg & Co., 213 N.C. 41, 195 S.E. 88; Lee v. Atlantic Coast Line R. R. Co., 212 N.C. 340, 193 S.E. 395; Weston v. Southern R. R. Co., 194 N.C. 210, 139 S.E. 237.
In McKinnon v. Howard Motor Lines, supra, Robert H. McKinnon testified that he ran in a "blinded area" for two or three seconds, at a speed of 35 miles an hour and for a distance of 100 feetother witnesses put it at 100 yards or 400 feetwhen he was completely blinded and could see nothing in front of him except the right-hand edge of the road. While he was so blinded he ran into the rear of a slowly moving or stalled truck which was being operated without rear lamps as required by G.S. § 20-129. On this evidence, Stacy, C. J., speaking for the Court, said: "Both his vision and his pre-vision seem to have failed him at one and the same time. Such is the stuff of which wrecks are made. The conclusion seems inescapable that the driver of the McKinnon car omitted to exercise reasonable care for his own and his companion's safety, which perforce contributed to the catastrophe. This defeats recovery * * *." [228 N.C. 132, 44 S.E.2d 737.]
It is clear that the plaintiff in this action *299 failed to exercise reasonable care for his own and his brother-in-law's safety under the existing circumstances, and that such failure contributed to their personal injuries and the damage to plaintiff's automobile. This defeats the plaintiff's right to recover.
The ruling below in sustaining defendants' motion for judgment as of nonsuit will be upheld.
Affirmed.
ERVIN and JOHNSON, JJ., dissent.
VALENTINE, Justice (dissenting).
I feel compelled to register my vote against the conclusion reached in the majority opinion. In my judgment, the plaintiff has made out a case which entitles him to have a jury pass upon the issues of negligence, contributory negligence and damages, and my vote is to reverse the judgment of nonsuit and allow the jury to pass upon the issues of fact.
In addition to the evidence of the plaintiff quoted in the majority opinion, I find that in speaking of the tractor, tank-trailer and its environs at the time and immediately before the wreck, the plaintiff also said: "There were no flares or lights stationed anywhere along here to indicate that this tank was across the road. Not anything at all. There was no person there with any flashlights to indicate that; there wasn't anything; those two bright headlights in the middle lane." And again, "No, sir. I didn't see a flashlight. There wasn't any light there of any kind. If there had been a light I could have seen it. If there had been any lights on the truck I could have seen these lights. * * * There were no flares or anything else to warn me that the truck was parked. * * * I called on him (the truck driver) three or four times with the dimmers trying to make him lower his lights. * * * The truck was a grayish color. It was a little dirty, nearly the color of the highway."
From the testimony of a passenger in plaintiff's car, this appears: "The trailer was high enough Morgan's light was shining under it. * * * Mr. Morgan was gradually slowing down all the time. * * The tractor part of the truck trailer was parked straight up in the middle lane, facing this way. It was a five wheel proposition, three axle proposition. I did not see any clearance lights or red lights at all on the tanker and none were burning on the tanker whatsoever. All I could see was two glaring headlights on the truck. * * * There wasn't any light at all on the tanker to warn me that this tanker was in the way."
Thus, from the plaintiff's evidence, viewed in the light most favorable to him as we are required to do upon a motion for judgment as of nonsuit, Powell v. Lloyd, 234 N.C. 481, 67 S.E.2d 664, these logical inferences may be drawn: The plaintiff and his brother-in-law were en route on highway 220 to the place of their employment at about 10 or 10:30 o'clock at night. Highway 220 is a three-lane highway paved to a width of 35 feet. As the plaintiff approached the point of collision, he encountered bright lights, resembling those of a locomotive, in the center lane. It developed that these bright lights were on the tractor part of the tractor-trailer combination belonging to the defendant, Southern Oil Transportation Company, and operated by its agent, Ernest Eli Cook. Plaintiff dimmed his lights several times in an effort to obtain the same courtesy from the driver of the other vehicle. The location was within a 35 mile zone and at no time did the plaintiff exceed 35 miles per hour. When his vision was interfered with by the tractor lights, he slackened his speed to from 25 to 30 miles per hour. He had passed the glare of the lights and was within 12 or 15 feet of the tank-trailer, when he discovered that the tank-trailer extended and formed a bridge entirely across plaintiff's right side of the highway and the adjacent shoulder. The tank, suspended bridge-like over the road, was about 4½ feet above the surface of the highway, so that the plaintiff's dimmed lights cast their rays along the surface of the highway beneath the tank. The grayish colored tank blended with the surface of the highway and formed an obstruction that was difficult to see in the darkness. *300 Plaintiff, upon seeing the tank, applied his brakes with full force, but was unable to stop and ran under the tank so that it hit the windshield of his automobile, resulting in great damage to the car and personal injury to the occupants of the car. There were no lights of any kind on or around the tank-trailer to indicate its presence across the road, and no person there to warn motorists of impending danger. There is no question in my mind but that the plaintiff's evidence makes out a case of negligence against the defendants. Whether upon this record the court was justified in concluding that contributory negligence appears from the plaintiff's evidence as a mater of law is the problem involved in this appeal.
In my opinion, that question is settled by the case, Rollison v. Hicks, 233 N.C. 99, 63 S.E.2d 190, 193, where the doctrine is fully stated as follows: "The test for determining whether the question of contributory negligence is one of law for the court or one of fact for the jury is restated in the recent case of Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307, 309, where this is said: `Contributory negligence is an affirmative defense which the defendant must plead and prove. G.S. § 1-139. * * * A judgment of involuntary nonsuit can not be rendered on the theory that the plea of contributory negligence has been established by the plaintiff's evidence unless the testimony tending to prove contributory negligence is so clear that no other conclusion can be reasonably drawn therefrom. * * * If the controlling or pertinent facts are in dispute, or more than one inference may reasonably be drawn from the evidence, the question of contributory negligence must be submitted to the jury.'" Measuring the plaintiff's testimony by this standard, the question of contributory negligence becomes a matter of fact for the jury and not one of law for the court.
The plaintiff's conduct is to be measured by the rule of the prudent man and whether his conduct at the time and immediately prior to the collision was that of a reasonably prudent man under the same or similar circumstances was a question of fact for determination by the jury. Moore v. Chicago Bridge & Iron Works, 183 N.C. 438, 111 S.E. 776.
In discussing the rule of the prudent man, Barnhill, J., in Rea v. Simowitz, 225 N.C. 575, 35 S.E.2d 871, 875, 162 A.L.R. 999, had this to say: "Hence the quantity of care required to meet the standard must be determined by the circumstances in which plaintiff and defendant were placed with respect to each other. And whether defendant exercised or failed to exercise ordinary care as understood and defined in our law of negligence is to be judged by the jury in the light of the attendant facts and circumstances." Citing Perkins v. Spray Wood & Coal Co., 189 N.C. 602, 127 S.E. 677. The same rule applies to the plaintiff when contributory negligence is relied upon as a defense.
My philosophy of life includes an abiding faith in the good judgment and common sense of the men and women who constitute the juries in our courts. To me, the right of a trial by jury is one of the brightest jewels in the diadem of democratic processes. "In my mind, he was guilty of no error, * * * who once said that all we see about us, kings, lords, and Commons, the whole machinery of the State, * * * end in simply bringing twelve good men into a box."
In conclusion, as my tenure of office draws to a close, I beg leave to say that I shall always carry in my heart a deep sense of gratitude for the opportunity of having served the people of my State as a member of this Tribunal. I say now and certify to succeeding generations that the fellowship and cooperation of my colleagues constitute a priceless treasure which I shall carry with me on the journey westward toward life's sunset with its restful radiant glow.
"Let Fate do her worst, there are relics of joy,
Bright dreams of the past, which she cannot destroy;
Which come, in the night-time of sorrow and care,
And bring back the features which joy used to wear.
Long, long be my heart with such memories filled!

*301 Like a vase in which roses have once been distilled
You may break it, you may shatter the vase, if you will,
But the scent of the roses will hang round it still."