114

**ROSENBLATT v. UNITED STATES**
(two cases).

**WILSON et al. v. UNITED STATES.**

**LIVESAY v. UNITED STATES.**

**HART v. UNITED STATES.**

Nos. 292, 293, 303, 290, 289.

United States District Court
E. D. North Carolina, New Bern Division.
March 6, 1953.

·R. E. Whitehurst, New Bern, N. C., Hamilton & McNeill, Morehead City, N. C., Hugh Fullerton, Washington, D. C., George Riddle, Jr., New Bern, N. C., for plaintiffs.

Charles P. Green, U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

These five actions were brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., and, for convenience and with the consent of the parties, were heard together. The causes are based upon a collision between a car owned and driven by Dave Johnston, Jr., a Commander

in the United States Navy, and a Marine Corps wrecker belonging to defendant, in charge of Sergeant Trammell and Pfc. Christifaro, of the U.S.M.C., who were on duty and acting within the scope of their employment and duties at the time. The collision occurred at about 12:30 a. m. on N. C. Highway between Swansboro and Bogue in fair weather. In the car operated by Commander Johnston were his wife, Anne Johnston, Dr. John D. Wilson, a Navy Lieutenant (Junior Grade), Mrs. Nancy E. Wilson, his wife, Franklin Carter Livesay, a Navy Lieutenant, and Mrs. Frances M. Livesay, his wife. The Naval officers, Johnston, Wilson and Livesay, were on leave from their ship, which was in harbor at Morehead City, N. C., and the party was returning to Morehead City from Camp LeJeune, proceeding in an easterly direction, when the accident occurred. The Marine Corps wrecker, driven by Christafaro, with Trammell as passenger, had been on its way from LeJeune to Morehead City, also proceeding easterly, when about thirty minutes before the accident, due to engine trouble or mechanical defect, it became necessary for the operators to stop it in the right-hand (south) lane of the highway. The marines in charge did their utmost to get the wrecker off the hard surface portion of the highway, but were unable to do so, and at the moment of impact the wrecker's rear dual wheels were located a foot or two to the right (south) of the center line of the highway, almost completely blocking the right-hand lane and the path of Johnston's automobile. The wrecker was equipped with lights as follows: two headlights, two tail-lights, two spot lights mounted on the cab facing to the rear, and two blackout lights. All lights were in good working condition and were operated by switches—but none of the lights were burning at the time of the collision and for a period before. No flares or lanterns were displayed to the rear.

The highway was surfaced with dull black asphalt, twenty-two feet in width; the roadway was not lighted, but it was a moonlight night and the visibility was good; the surface of the highway was dry; there was no curve in the road which might have affected the view of Commander Johnston; along the south side of the hard surface for several hundred yards both to the east and to the west of the wrecker there was a level shoulder about ten feet in width; the wrecker was painted olive drab and the rear axle housing was covered with grease and dust; the wrecker's tires were black; it was not equipped with rear reflectors.

While being operated by Commander Johnston at a lawful and reasonable rate of speed on the proper (south) side of the highway, with proper headlights burning, the automobile collided with the stalled or stationary wrecker, the front of the automobile striking the rear end of the wrecker and causing the injuries and deaths in question. As the Johnston automobile approached the wrecker from the west, a second automobile approached from the east at about the same relative distance from the wrecker, but this automobile came to a stop at about 75 yards before reaching it, and the head lights dimmed.

The Johnston car was entirely under his control and no one of the passengers had any part in or control over the manner or way in which he drove. All six occupants suffered personal injuries, and Commander Johnston, his wife, Anne Johnston, and Frances M. Livesay died as a result of their injuries.

The plaintiffs assert that the deaths and injuries resulted from the negligence of defendant's servants in blocking the lane of the Johnston car at night, without complying with the North Carolina statutes enacted to protect other users of the highway in such a situation: (a) G.S. § 20–134, requiring in case of a stationary vehicle on a public highway at night that a red light visible to the rear for 500 feet, and one or more lights projecting a white light in front be displayed, and (b) G.S. § 20–161, requiring in case of a disabled truck on the highway after sundown that warning flares or lanterns not less than 200 feet to the rear be displayed.

The defendant denies negligence, contending that the sole proximate cause of the accident was the negligence of Com-

mander Johnston, and as to the driver pleads contributory negligence.

■ It appears from the evidence and my findings thereon that defendant's servants violated both Section G.S. §§ 20–134 and 20–161, and I find that such violations constituted negligence per se. It is found that defendant was guilty of negligence for its failure to display lights and flares or lanterns, and that such negligence was the proximate cause of the resulting deaths and injuries.

In the case of Rosenblatt, Administratrix of Dave Johnston, Jr., who was the driver (No. 292), the Government contends that even if the negligence issue be answered against it, the contributory negligence issue should be answered in its favor, thereby precluding recovery on account of Johnston's death.

■ The North Carolina law controls. It is true that North Carolina, differing from some other jurisdictions, has adopted the rule that a driver of an automobile who "outruns his head lights" is guilty of contributory negligence, and in several cases our Court has found such guilt as a matter of law. For example, in the case of Morgan v. Cook, 236 N.C., at page 477, 73 S.E.2d 296, a four-three decision, such was the holding. The evidence in that case showed that plaintiff (driver), as he approached a stationary trailer across his lane, was blinded by the lights of a tractor in the middle lane about 1400 feet away, that notwithstanding he continued in his right lane at 30 to 35 miles per hour and did not see the trailer in time to avoid a crash. In sustaining a judgment of nonsuit, the Court declared: "The plaintiff drove his automobile more than 1300 feet while he was blinded by the lights of defendant's oil truck. According to his evidence, while he was travelling this distance he was so blinded he could see nothing in his lane of travel * * * the contributory negligence of the plaintiff is manifest from his own testimony." There are other cases to like effect. See Godwin v. Nixon, 236 N.C. 632, 74 S.E.2d 24. But there are North Carolina cases in which apparently a contrary conclusion was reached. In

Powell v. Lloyd, 234 N.C. 481, 67 S.E.2d 664, in reversing a judgment of nonsuit, the Court declared: 234 N.C. at page 486, 67 S.E.2d at page 667, "The plaintiff cannot be charged with contributory negligence as a matter of law merely because he did not stop when the high shining lights of oncoming traffic partially blinded him and interfered with his vision of the road ahead. * * * Whether the plaintiff could have avoided the collision and its resulting injury or whether his conduct was different from that of any reasonably prudent man in the same or similar circumstances are questions about which reasonable minds may honestly differ." According to my view, such situation exists here, and, in my opinion, the evidence in the case under North Carolina law does not show affirmatively, the burden resting on the defendant, that Commander Johnston was guilty of contributory negligence as a matter of law. This conclusion is supported by the opinion of Judge Northcott in the case of Morris v. Sells-Floto Circus, 4 Cir., 65 F.2d 782, 784 in which he quotes as follows from Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 58 A.L.R. at page 1482: " * * * The rule contended for is, in our opinion, entirely too broad, and, if put in effect, would have very serious and unjust results. It loses sight of the fact that one driving at night has, at least some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; it does not take into consideration the fact that visibility is different in different atmospheres, and that at one time an object may appear to be 100 feet away while at another time it will seem to be but half that distance; it fails to consider the honest error of judgment common to all men, particularly in judging distances at night; it loses sight of the fact that the law imposes the duty on all autos traveling at night to carry a red rear light and the duty on all persons who place obstructions on the road to give warning by red lights or otherwise; it fails to take into consideration the glaring headlights of others and the density of the traffic and other like things which may require the instant at-

tention of the driver; it does not take into consideration that a driver at night is looking for a red light to warn him of danger, and not for a dark and unlighted auto or other obstruction in the road.

"We believe that, generally speaking, where the statutes or the decisions of the courts require red lights as a warning of danger on any object in the highway and such lights are not present, it is a question for the jury to determine whether the driver at night should have seen the obstruction, notwithstanding the absence of red lights."

Judge Northcott then adds the following, 65 F.2d at page 785: "To hold that persons traveling a public highway in an automobile, at night, must at all times be ready to stop instantly, would be to lay down a rule that would greatly impede traffic. The rate of progress would be so slow that all travel would be practically prohibited. Those using the public highway have a right to place some reliance upon the law prohibiting obstruction of the highway, unless the obstruction be marked by a light, as required by the North Carolina statute. Such a holding by the courts would encourage the lawless placing of obstructions on the highway by persons inclined to be careless or lawless and would make travel over the highways in the nighttime much more hazardous than it now is or should be; would be contrary to the spirit of modern progress; and would virtually repeal statutes requiring the carrying of lights by vehicles on the highways, as far as any civil liability is concerned."

I do not find, either as a matter of law or fact, that he failed to exercise the care of a person of ordinary prudence. It is plain, of course, that the facts in each case present a question unique to that particular case. In the case of Morgan v. Cook, above, as well as in some of the other cases of like import, it appeared affirmatively that the driver continued to drive for some substantial time after being blinded by the lights of an oncoming vehicle. Here, the driver was killed in the accident and there is no evidence on this question. It is reasonable to believe that Johnston failed to see the wrecker in time, but whether such failure was due to the lights of the approaching automobile, or to some other cause beyond his control, in the exercise of due care, cannot be determined. It seems to me that it would be pure speculation to say that there was a failure to use due care on the part of Johnston.

In the case of Lambert v. Caronna, 206 N.C. 616, 175 S.E. 303, 305, the facts were as follows: A car was parked on the highway at night without a tail-light, and the plaintiff collided with it. In sustaining a verdict and judgment for the plaintiff, the Court quoted from the opinion in Williams v. Frederickson Motor Express Lines, 198 N.C. 193, 194, 151 S.E. 197, as follows: "Contributory negligence of the plaintiff will not be held to bar recovery as a matter of law when an inference in his favor is permissible from the evidence, and in this case where the defendant had parked its car on a dark night upon the side of the highway without a tail light, and there is a reasonable inference that under the existing conditions the plaintiff could not have seen the truck in time to have avoided the injury, in the exercise of ordinary care, the question of contributory negligence upon the issue is for the determination of the jury."

My findings are that the issue of negligence should be answered "Yes" in all five cases, and that the issue of contributory negligence in the case of Myrtle Rosenblatt, Administratrix of Dave Johnston, Jr. (No. 292) should be answered "No."

It follows from the above that the contention of the defendants that the negligence of the driver of the automobile was the sole proximate cause of the collision and resulting deaths and injuries must be rejected. Respect is given to the North Carolina cases cited by the defendant, but it is held that they do not require the holding suggested in this case.

### Factual Bases for Assessment of Damages

No. 292—(a) *For the wrongful death of Dave Johnston, Jr.:*

At the time of his death in September, 1949, Dave Johnston, Jr. was thirty-four years of age and in good health; under

N. C. Mortuary Tables (last revised in 1883) he had an expectancy of 32.5 years. As of the date of his death, his expectancy was substantially longer. According to the expert testimony offered by plaintiff, the expectancy of Commander Johnston was 40.8 years, and this testimony should be considered in determining the amount of damages to which his Administratrix is entitled. In June, 1935, he entered the U. S. Naval Academy, and, though his commission had not been delivered, he was promoted to the rank of Commander in August, 1949, effective as to pay from July 22, 1948. He had not reached the peak of his earning power. In October, 1949, the statutory pay of a commander, with dependents, with ten years service, was $618 per month, $456 base pay, $120 for quarters, and $42 subsistence. I find that the cost of living in the vicinity of Norfolk, Virginia, where deceased lived, for a person of his rank and station in life, was in the neighborhood of $3,000.

(b) *For the damage to automobile of Dave Johnston, Jr.:*

This car had a fair market value of $2,-494.57 at the time of the accident, and a fair market value of $150 immediately thereafter.

No. 293—*For the wrongful death of Mrs. Anne Johnston:*

Mrs. Anne Johnston at the time of her death was 27 years of age, and her expectancy, under N. C. Mortuary Tables, was 37.4 years, and her actual expectancy was substantially longer. This well known increase in life expectancy and the testimony of plaintiff's expert should be considered in determining the amount of damages to which her Administratrix is entitled. She had been employed by the Government from 1941 through 1943 as a Clerk-Stenographer, and upon her resignation was rated in CAF–5, which, at the date of her death, carried a minimum salary of $3,100. Her efficiency rating was very good. She was not employed at the time of her death, but was devoting her time to her husband and three minor children. However, she retained her rating as CAF–5. Her efficiency ratings and rapid pro-

motions in Government service indicate that she had not reached the peak of her earning capacity. Her yearly living expenses at the time of her death, if employed and paying her own expenses, should have approximated $1,760.

No. 303—(a) *For personal injuries to Dr. John D. Wilson:*

Dr. John D. Wilson, at the time of the accident, was a Lieutenant (Junior Grade) in the United States Navy and 25 years of age; he is now in civilian life and is practicing medicine. In the accident he received a severe blow on the head, causing him to lose memory as to events immediately before. He received multiple lacerations on the face, requiring sutures, and also contusions of the jaw. There is a noticeable flattening of the cheek-bone and damages to facial nerves. There are multiple small scars on the right side of the face and a larger scar above the right eye, with slight puckering of the right lid. He had a scar on the chin with some disfigurement. He has suffered substantial physical pain and still suffers from tenderness along the gums on the right upper side and right lower side, and numbness around four upper teeth on the right side. There is also a partial loss of feeling in the right forehead area. The abnormal condition of the right side of the face results in food falling from his mouth without his knowledge, and when shaving with an electric razor he experiences a sensation "like a dentist drilling on his face". He has an unnatural timidity when driving an automobile. He uses an automobile extensively in his practice.

(b) *For personal injuries to Mrs. Nancy E. Wilson:*

Her injuries were multiple lacerations of the face and scalp; fractured right wrist; dislocated and fractured hip; physical and mental suffering; facial scars remain which are more noticeable because of an otherwise very pretty face. There is some distortion of the left eyebrow resulting from a five-inch laceration. She experiences abnormal sensation in the forehead area, together with numbness on a large part of the scalp. The condition of

the scalp causes particular annoyance when the lady goes to the hair-dresser. The condition is probably permanent. Because of the fracture of the right wrist Mrs. Wilson suffers about a ten percent loss of flexion, and there is a definite possibility of arthritis which would be permanent. She suffers severe pain in the wrist when she attempts to do heavy housework and upon weather changes. Before the accident she enjoyed playing the piano, but does not now because the wrist is weak and tires easily. The dislocation of the left hip joint was accompanied by a fracture of the rim of the hip socket. The leg was placed in traction and later she was given a general anaesthetic in order to reduce the dislocation. She was placed in a body cast from her chest to her left ankle, her right leg remaining free, in which she remained from September 12, 1949, to October 24, 1949. Afterwards she was on crutches for a short while. She was confined to the hospital for 53 days, six days with her leg in traction and 43 days in a plaster cast. There is a beginning of arthritis in the hip joint and this condition will probably grow worse. The injuries have prevented Mrs. Wilson's performing many of her duties as a housewife, such as housecleaning and doing the laundry. This inability has required that Mrs. Wilson have domestic help at wages of from 60¢ to 75¢ per hour for about ten hours per week. Before the accident she did all of the housework. She is entitled to recover this item, since the loss of consortium is not recoverable by the husband in North Carolina. Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E.2d 611. She was 24 years of age at the date of her injuries.

No. 289—*For the wrongul death of Mrs. Frances W. Livesay:*

This deceased was 39 years of age and had a life expectancy, under N. C. Mortuary Tables, of 28.9 years. As in the case of Commander Johnston and Mrs. Anne Johnston, the well known increase in life expectancy and the testimony of plaintiff's expert should be considered in determining the amount of damages to which her Administratrix is entitled. She was in good health at the time of her death and was then receiving a salary of $175 per month as office manager and bookkeeper for the Girl Scout Organization in Norfolk, Virginia, her salary having been raised to that figure from a starting salary of $140 per month in 1946. Her qualifications were such that she could have qualified as a foreign language interpreter. Her probable living expenses would have been about $1,760 per year. In addition to performing her duties as secretary and manager of the Girl Scout Organization, Mrs. Livesay maintained the home for herself and her husband, and also conducted all her husband's business affairs. In carrying out her household duties she required the services of a maid for 1½ days per week at $4 per day.

No. 290—*For personal injuries to Franklin Carter Livesay:*

At the time of the accident, Livesay was a Lieutenant in the United States Navy and in excellent health; he was 38 years of age. During the period from 1942 to the date of the accident, his vision was 20/20 without glasses. In the accident he suffered a fracture of the nose, a fracture of the skull, a fracture of the fourth cervical vertebra, a fracture of the proximal phalanx of the left big toe, a fracture of the shaft of the metatarsal attenae, and a rupture of choroid in the right eye. He was a patient in the Camp LeJeune Hopital about 7½ months and when discharged the rupture of choroid of his right eye continued. He was in a state of coma for several weeks and was required to undergo painful appliances and treatment; particularly three different casts about his neck, an operation to the bone in his foot with residual infection following; and a cast thereon for six weeks; he now experiences a distinct impairment in both the sense of taste and the sense of smell, and a constant blurring of vision with reduction in the size of the picture image; he sustained an injury to a nerve on the side of his nose and under slight pressure to that side of the face he experiences a sensation of involuntary movement of the eye; his nose is now slightly misshapen. Lt. Livesay's present physical condition

probably will continue for sometime, perhaps for life.

In each of the wrongful death cases Nos. 292, 293 and 289, the Administratrix is entitled to recover "the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy * * * [considering] his prospects in life, his habits, his character, his industry and skill, the means he had for making money, the business in which he was employed; the end of it all being * * to fix upon the net income which might be reasonably expected if death had not ensued, and thus arrive at the pecuniary worth of the deceased to his family." Mendenhall v. North Carolina R. R., 123 N.C. 275, 31 S.E. 480.

For the damage to the automobile the Administratrix in No. 292 is entitled to recover the difference between its fair market value before and after the collision.

In each of the actions for personal injuries, the plaintiff is entitled to recover fair and just compensation for past physical pain and suffering resulting directly from the injuries received in the accident, including that incident to any surgical operation and medical treatment, for any reasonably probable future pain and suffering, for all permanent injuries or lasting impairment of health; for the disabling effect of the injuries, past and prospective, for impairment of earning power, the impairment of any physical function or sense. Compensation for future pain and suffering, and for future impairment of health and earning power should be reduced to the present cash values and compensation should be allowed only for such future effects from the injuries as are established with reasonable certainty.

There is no claim for expenses in connection with hospital care, nursing, medicines and doctors' bills, as these were met by the defendant. Also, there is no claim for lost time.

Assessment of Damages

Under the above principles of law governing the scope and measure of damages, the Court finds as follows:

In No. 292, for the wrongful death of Dave Johnston, Jr., the plaintiff is entitled to recover as damages the sum of $65,000; and for damages to the automobile of Dave Johnston, Jr., the sum of $2,344.57.

In No. 293, the Administratrix is entitled to recover as damages for the wrongful death of Anne Johnston the sum of $12,500.

In No. 303, the plaintiff, John D. Wilson, is entitled to recover, as damages for his injuries, the sum of $3,500; and Nancy E. Wilson is entitled to recover, as damages for her injuries, the sum of $7,500.

In No. 289, the Administratrix is entitled to recover, as damages for the wrongful death of Frances M. Livesay, the sum of $12,500.

In No. 290, the plaintiff, Franklin Carter Livesay, is entitled to recover, as damages for his injuries, the sum of $10,000.

Appropriate judgments will be entered.